Argued February 1, affirmed April 3, rehearing denied May 22, 1923.

## TRAUTMANN *v.* SUPREME LODGE, KNIGHTS OF PYTHIAS.

(213 Pac. 785.)

**Insurance—Fraternal Order Entitled to Cancel Policy of Member Who Quit Prohibited Occupation and Commenced It Again.**

After the Knights of Pythias, a fraternal order, issued an insurance policy to a member who was a saloon-keeper, it enacted rules allowing the present saloon-keeper members to continue their insurance, but prohibited any new saloon-keeper members or any old members from commencing that business.   Insured discontinued being a saloon-keeper and accepted insurance at a lower rate for six years, and then commenced that business again.   *Held,* that the order was entitled to cancel his policy.

107 Or.—38

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is an action brought by Minna Trautmann, widow of Theodore Trautmann, against the supreme lodge of the Knights of Pythias to recover on a benefit certificate issued by the insurance department of the order to her husband.

The structure of the order is as follows: First is the supreme government, controlled by such lodges as possess warrants or charters legally granted which have not been suspended or revoked, and such subordinate lodges as have legal charters. It consists of three co-ordinate departments, namely, the legislative department, the executive department and the judicial department. The legislative powers of the order are vested in a supreme lodge. The supreme constitution, and the laws and rituals enacted by the supreme lodge in accordance therewith, constitute the supreme law of the order of the Knights of Pythias. In addition to the three co-ordinate departments there is a department, formerly known as the endowment rank but now known as the insurance department, established for the purpose of providing financial protection to the beneficiaries of deceased members of the order. Under Article XIII of the supreme constitution the insurance department is a fraternal beneficiary society and is the same in corporate capacity and identity as the respondent for the purposes of this action. Such department is governed by the supreme constitution and such laws as the supreme lodge may from time to time enact. Membership in such insurance department is restricted to Knights in good standing in a subordinate lodge of the order.

Theodore Trautmann became a member of the Knights of Pythias prior to the twenty-fourth day of January, 1897. On the twenty-fourth day of January, 1897, he was a barkeeper and applied for membership in the insurance department. A benefit certificate was issued to him. At the time he became such a member the constitution and statutes of the supreme lodge, Knights of Pythias, did not prohibit a saloon-keeper from becoming a member of the order nor from becoming a member of what was then known as the endowment rank, now designated as the insurance department.

In October, 1904, the insurance department classified its risks. In the classified risks were cited occupations termed "prohibited occupations," among which was listed the business of a saloon-keeper or barkeeper, which, for the purposes of this action, may fairly be assumed to be synonymous. From that day on the insurance department refused to issue a benefit certificate to any person engaged in the business of keeping a saloon.

In 1906 the supreme lodge enacted a statute which prohibited membership in the order to one who was engaged in the business of a saloon-keeper. At the same time it enacted a code of statutes for the benefit of the insurance department so that after October, 1906, no person could become a member of the order who was a saloon-keeper. Membership in the insurance department being conditioned upon membership in the order, it followed that no saloon-keeper could obtain protection from the insurance department, but this was construed by the society as not affecting those who were engaged in the saloon business at the time the statute was enacted. They were classified as "extrahazardous risks" and the statute so construed

as not to be retroactive so far as they were concerned so long as they maintained their status. The statute provided, however, substantially that should any member of the order of the insurance department not then engaged in the saloon business subsequently engage in that business his membership in the order would be forfeited and his benefit certificate canceled. In the code of statutes governing the insurance department enacted in October, 1906, the membership was divided into five classes. Certain options were given to the then members of the insurance department to change into any one of these classes. Mr. Trautmann desired to take advantage of one of these options and on the thirteenth day of August, 1907, surrendered his original benefit certificate and there was issued to him another benefit certificate in what was designated as the fifth class. At this time Trautmann was still engaged in the saloon business. The statutes of 1906 provided, among other things, that any member of the order who was not at the time of the enactment thereof a saloon-keeper and who should thereafter engage in the occupation of a saloon-keeper would be deemed guilty of an offense against the order and upon conviction thereof would be suspended or expelled.

To recapitulate, the following are the progressive provisions enacted by the supreme lodge in regard to saloon-keepers: (1) Prior to October, 1904, there were no restrictions as to saloon-keepers. (2) After October, 1904, a saloon-keeper could become a member of the order but could not become a member of the insurance department. (3) After October, 1906, a saloon-keeper could not become a member of the order and consequently could not become a member of the insurance department. (4) After October,

1906, a saloon-keeper then a member of the order could continue a member of the order but was prohibited from applying for membership in the insurance department. (5) After October, 1906, a member of the order not then a saloon-keeper could not engage in that business. (6) After October, 1906, any person thereafter initiated into the order could not engage in the business of a saloon-keeper.

On the fourth day of August, 1910, the home office of the Knights of Pythias was notified in writing that Trautmann had changed his occupation and had "retired" from the saloon business. Based upon that fact his monthly assessments were reduced, he being no longer an "extrahazardous risk." He continued to pay assessments as an ordinary risk from that date for a period of six years in which he was not engaged in the saloon business. Later on, in August, 1916, he re-engaged in the business of keeping a saloon in the city of Chicago, Illinois. He did not notify the insurance department of the Knights of Pythias that he had re-entered the saloon business until October, 1916. In the meantime he paid two assessments to the local secretary at the increased rate required from those who were saloon-keepers. The secretary was ignorant of the fact that Trautmann had re-engaged in the saloon business. When the home office was notified that Trautmann had re-engaged in the saloon business the board returned the assessments so paid and they were delivered to Trautmann's wife, who seems to have been his agent in paying these assessments. The board canceled his certificate for the reason that Trautmann, having abandoned his occupation of a saloon-keeper and having accepted protection at the reduced cost for six years, could not thereafter engage in an occupation

classed as a prohibited occupation, the board having taken the position, which it still maintains in this action, that if Trautmann had remained continuously in the saloon business he would have been exempt from the provisions of the supreme statutes directed against the saloon business, but having once abandoned the occupation of selling liquor for six years and accepted the benefit of a reduced assessment, he came within the provisions of the supreme statutes governing prohibited occupations.

The Circuit Court found in favor of defendant and plaintiff appeals.    AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Murdoch & Crum,* with oral arguments by *Mr. V. A. Crum* and *Mr. Nicholas Jaureguy.*

For respondent there was a brief and oral argument by *Mr. Frank S. Grant.*

McBRIDE, C. J.—We are of the opinion that Trautmann by notifying the home office that he had retired from the saloon business and thereby having secured reduced assessments for a period of six years stood exactly in the same position on resuming his former occupation as if he had been a new member. He could not blow hot and cold with the same breath and "switch" from an extrahazardous occupation to an ordinary risk for a period of years and then, when it appeared to be convenient or profitable to him, resume the extrahazardous occupation at his pleasure. Had he continuously pursued the occupation of a saloon-keeper and paid the dues incident to that extrahazardous business he would have come within the statute and his certificate would not have been subject to cancellation.

Section 487 of the supreme statutes, among other things, has the following provision:

"The prohibited grade shall comprise those persons following occupations or employments which are not deemed insurable risks by the board. The board shall have power to exclude from membership in said classes those engaged in extremely hazardous occupations, and to cancel or reduce to the minimum amount the certificate of any member of said classes who may engage in such extremely hazardous occupation."

This gave the board the power in this instance to cancel Trautmann's certificate, as it could not be reduced to a minimum amount, being already the minimum, and the board's action in so canceling was strictly within its power and in accordance with the contract embraced in the second certificate of membership, which contains the following provision:

"The charter, all the laws, rules and regulations of the Society governing the Insurance Department, now in force, *and as the same may be hereafter changed, altered, added to, amended and repealed,* together with the said application for transfer and all applications and medical examinations previously made for the certificate surrendered by said application for transfer, and any subsequently made applications that may be accepted respecting this certificate, and this Certificate consisting of Pages One, Two and Three shall compose the contract between the member and the Society." (The italics are ours.)

In resuming the saloon business after having once renounced it and thereby obtaining a decreased rate of insurance the insured violated his contract with the company and the board had a perfect right to cancel his certificate.

As remarked by the trial judge, the whole policy of the order, since 1906 especially, has been one of weeding out members of disreputable occupations,

thereby adding dignity to the order and improving its morale, and while many technical objections are urged in this case we think the board was clearly within its rights in canceling the certificate, and that the appellant should not recover.

The judgment is therefore affirmed.

AFFIRMED.    REHEARING DENIED.

BEAN, BROWN and McCOURT, JJ., concur.